J. N. CAMDEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11505.   Promulgated March 26, 1928.

*Ward Loveless, Esq.,* for the petitioner.
*Henry Ravenel, Esq.,* for the respondent.

## OPINION.

LITTLETON: The record of this action contains the testimony of the petitioner and two other witnesses, all of whom are well known in Kentucky as raisers and trainers of thoroughbred horses and racing horses. The evidence goes at much length into the discussion of pedigrees, trials, races, form, and values of the 20 horses destroyed, and the witnesses all agreed that these 20 horses were, on the morning of May 9, 1922, worth $150,000.

Upon consideration of this testimony we are convinced that all of these witnesses had in mind the selling values of the horses; the amounts which the petitioner should ask as his selling prices and which he might reasonably expect to receive in the event of a purchaser completing a bargain for the sale of one or more of the horses. This testimony is wholly uncontroverted and standing in the record as it does we might be justified in finding that the selling market value of these 20 horses was, on the morning of May 9, 1922, $150,000.

The petitioner has presented and argued his case on the theory that, under the provisions of section 214 (a) (6) of the Revenue Act of 1921, the measure of his loss is the amount of $150,000, as testified to by the witnesses, and that inasmuch as said section 214 (a) (6) of the Revenue Act of 1921 contains no provision respecting the basis of computing a loss upon property produced or acquired after March 1, 1913, that said section must be interpreted to mean that the measure of such loss is the market value of the property at the time of the loss, without any reference to what may have been the production cost or a possible buying market.

On the other hand, the respondent maintains that, inasmuch as the petitioner has, during the years when these horses were produced, raised, and trained, taken as deductions in his annual income-tax returns all the cost of labor, material, and supplies used in carrying on his farm and in raising and training his horses, there is, therefore, no basis upon which a loss of the petitioner's horses can be predicated.

While it appears to be true that the Revenue Act of 1921, either in section 214 (a) (6) or in other parts of said Act, does not contain a specific provision for measuring a loss from destruction or damage to property which was acquired *subsequent* to March 1, 1913, the

Board is of the opinion that the deduction on account of such loss is to be computed upon the basis of the cost of such property. The statute does provide (section 214 (a) (6)) that where the property destroyed or damaged was acquired *prior to* March 1, 1913, " the deduction shall be computed upon the basis of its fair market price or value as of March 1, 1913." Section 202 provides the basis for determining the loss on a sale or other disposition of property, whether acquired prior or subsequent to March 1, 1913. The question of the true measure of gains realized and losses sustained on account of property acquired prior to March 1, 1913, and sold, or otherwise disposed of, subsequent to this date, has been before the Supreme Court on various occasions and there judicial determinations made which we think afford a guide in measuring losses which are deductible. (*Goodrich* v. *Edwards*, 255 U. S. 527; *Walsh* v. *Brewster*, 255 U. S. 536; *United States* v. *Flannery*, 268 U. S. 98; *McCaughn* v. *Ludington*, 268 U. S. 106.) The basis of these decisions is, as we understand them, that only " actual gains " are taxable and only " actual losses " are deductible, and that in determining what constitutes an " actual gain " or " actual loss," cost is the starting point, subject to the limitation provided on account of the value which existed on March 1, 1913. That is, the loss to be recognized would be on account of capital which had been invested or which existed on March 1, 1913. We are of the opinion that the same principle is here applicable and that the loss to be allowed on account of property acquired subsequent to March 1, 1913, can not exceed the amount invested in such assets, that is, cost. In *Jackson County State Bank*, 2 B. T. A. 1100, the Board said:

> The statute provides for a deduction on account of losses sustained during the taxable year. The expression " losses sustained " means actual losses and not paper losses. Where the March 1, 1913, value of property was greater than the cost, the actual loss sustained when the property is destroyed or demolished must be based on the cost of the property. Any other interpretation would be inconsistent with the principle announced in *United States* v. *Flannery*, 268 U. S. 98; and *McCaughn* v. *Ludington*, 268 U. S. 106. While in those cases losses on the sale of assets and not losses on account of destruction of property were involved, the basic principle is the same. In the case of a loss on the sale of property the statute expressly provides that, for the purpose of ascertaining the gain derived or loss sustained in the case of property acquired before March 1, 1913, the basis for determining the deductible loss is the March 1, 1913, value. Yet the court held that the March 1, 1913, value was merely a guide-post to determine whether a loss had been sustained since March 1, 1913, and that the loss was not to be based on March 1, 1913, value unless that value was less than cost. The principle applies with equal force in the case of a loss on account of destruction of property.

See also *George B. Friend*, 8 B. T. A. 712.

To hold otherwise in the instant case would be to permit losses on account of unrealized profits and to apply a principle which is

not only inconsistent with that followed in the cases of other losses, but also which produce results which are absurdly inconsistent with the loss allowable on account of property acquired prior to March 1, 1913. The following supposititious case will illustrate the results which would follow from petitioner's theory: An asset was acquired prior to March 1, 1913, at a cost of $50 and this asset had a value on March 1, 1913, of $50. Another asset substantially comparable was acquired in 1915 at a cost of $50. Each asset had a value of $300 in 1922 when they were destroyed by fire. On the first asset acquired the petitioner would permit a deduction of $50 and on the second asset $300. The Board is unwilling to impute to Congress the enactment of a statute which would effect such results, and is of the opinion that, when the statute is viewed as a whole, no such results were either intended or accomplished.

An application of the principle which we have set out above as the basis for determining the deductible loss here in question makes necessary the affirmation of the deficiency as found by the Commissioner, for the reason that the only evidence presented by the petitioner was as to the market value of the horses when destroyed and no evidence was furnished as to their cost.

Reviewed by the Board.

*Judgment will be entered for the respondent.*